J3iddarc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                    New York, N.Y.

4              v.                                 14 Cr. 0534-01(JSR)

5   CALVIN R. DARDEN, JR.,

6                  Defendant.

7   ------------------------------x

8
                                                 March 18, 2019
9                                                3:14 p.m.

10

    Before:
11
                        HON. JED S. RAKOFF,
12
                                        District Judge
13

14                         APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  ANDREW ADAMS
17       Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK INC.
         Attorneys for Defendant
19  BY:  JENNIFER L. BROWN

20            – also present –

21  Ryan Lehr, U.S. Probation Department (EDNY)

22  Jaleesa Harris, U.S. Probation Department (SDNY)

23

24

25

J3iddarc

1          THE CLERK:  This is March 18, 2019.  This is United

2     States versus Calvin Darden, Jr., Docket Number 14 Cr. 534,

3     Defendant No. 1.

4          Will everyone please be seated and will the parties

5     please identify themselves for the record.

6          MR. ADAMS:  Yes.  Good afternoon, your Honor.  Andrew

7     Adams for the United States, and with me at counsel table are

8     Probation Officers Ryan Lehr of the Eastern District and

9     Jaleesa Harris of the Southern District.

10          P.O. LEHR:  Good afternoon, your Honor.

11          P.O. HARRIS:  Good afternoon, your Honor.

12          THE COURT:  Good afternoon.

13          MS. BROWN:  Good afternoon, your Honor.  Jennifer

14     Brown for Mr. Darden.

15          THE COURT:  Good afternoon.

16          So I guess my first question is where does Mr. Darden

17     stand in terms of employment?

18          MS. BROWN:  Your Honor, he recently obtained

19     employment --

20          THE COURT:  I'm sorry, you need to either bring the

21     microphone closer to you or -- yes.

22          MS. BROWN:  He recently obtained employment full-time,

23     your Honor, salaried employment.  He provided documentation to

24     the Probation Department.  The Probation Department

25     discussed -- spoke with the potential employer.  There was a

J3iddarc

1   slight issue in that the owner of the company also has a prior

2   conviction but was interested in offering employment to other

3   people with prior convictions, and so the Probation Department

4   vetted it more carefully than they otherwise if he didn't have

5   a prior conviction.  So, he is recently, your Honor, employed.

6               THE COURT:  So let me just ask the probation officer:

7   That is all correct?

8               P.O. LEHR:  That is correct, your Honor.

9               THE COURT:  So what is the nature of the employment.

10              P.O. LEHR:  He is head of business development for an

11  apparel company.

12              THE COURT:  And what does he get paid?

13              P.O. LEHR:  51,800.  Is that correct?

14              MS. BROWN:  52-8.

15              P.O. LEHR:  52-8, your Honor.

16              THE COURT:  OK.  Very good.

17              So where we do we stand in terms of him in terms of

18  restitution?

19              MR. ADAMS:  Your Honor, my understanding from Officer

20  Lehr is that there has been another recent payment in the last

21  week or so, since the last time we saw the Court.  And now that

22  Mr. Darden has employment, I expect that there is going to be a

23  further conversation with the Financial Unit with my office to

24  discuss that payment plan that had been --

25              THE COURT:  Well, you may recall -- and let me just

J3iddarc

1    remind you -- that your office unilaterally, without notifying

2    the Court, reduced the monthly payment to $200 a month.  That

3    had never been approved by the Court, and I don't want that to

4    happen again.  So, if you enter into any new arrangement, you

5    had better clear it with me first.

6             MR. ADAMS:  Certainly, your Honor.

7             THE COURT:  All right?

8             MR. ADAMS:  And I will convey all of that to the unit

9    as well.

10             THE COURT:  But now do I understand from what you just

11    said that he is not -- is he up to date on the $200 a month, or

12    no?

13             P.O. LEHR:  Yes, he is, your Honor.  He made a lump

14    sum payment of 600.

15             THE COURT:  OK.  Very good.

16             Then I think the only other issue, which I'm not sure

17    needs to involve the Court, at least at this point, is there

18    apparently were some private arrangements reached between

19    Mr. Darden's father and some of the parties that were owed

20    restitution so that they would no longer be owed restitution.

21    Do I have that right?

22             MR. ADAMS:  There were private agreements among those

23    parties, not necessarily for the purpose of satisfying

24    restitution, but I do think the Court is correct that --

25             THE COURT:  Whoa, whoa, whoa, whoa, whoa.  If they

1    weren't for -- a victim presumably, whatever you call it, only

2    has a sum certain in terms of loss.  So if they get paid a

3    portion of that loss and it's called fibberty-jibberty, it

4    still reduces what Mr. Darden has to pay -- the defendant,

5    Mr. Darden, has to pay by way of restitution to that person.

6            MR. ADAMS:  Your Honor, respectfully, if it is in a

7    civil -- if it is in a civil proceeding, either in a state or

8    federal proceeding, and it is for the same loss that's

9    calculated in the restitution, that's correct, and there is a

10   mechanism in the statute that allows for that offset.  In this

11   case, outside of that specific context, I can imagine that the

12   victim would -- at least one of these victims would probably

13   say, one, that's not really all I was owed and my loss greatly

14   exceeds the amount that I paid out directly in furtherance of

15   the fraud, I had opportunity costs, etc., etc., that might not

16   actually correspond to what they were seeing.  Another victim

17   in this case may receive a sum that was substantially less than

18   what their restitution amount is, so regardless of how loss

19   is -- or how that amount is quantified, they would still be

20   owed something.

21           But from the government's perspective, there is the

22   possibility that Mr. Darden, Sr. would have a claim against

23   either of those victims for subrogation, essentially, but there

24   is no offset under the restitution statute.  And I think the

25   Court is correct, there is no motion from the government.  I

J3iddarc

1    don't believe that there is a motion from --

2         THE COURT:  No.  If there is no motion from anyone,

3    then it makes my job easy.

4         But let me ask defense counsel:  I understand the

5    hypotheticals that the government has raised, which may or may

6    not be accurate because no one has even seen these agreements,

7    but if in fact payment was made by Mr. Darden's father that

8    should be offset against his restitution amount, I would have

9    thought you might like to know that?

10        MS. BROWN:  Your Honor, I was unfamiliar with the case

11   that the government cited, U.S. v. Tutterow, until they

12   submitted it, and it seems to me that the case cited by the

13   government does say what they said it is, which is that an

14   out-of-court settlement does not offset restitution.

15        THE COURT:  Well, I don't understand that, and

16   moreover, while I haven't taken a look at that case, it is a

17   case from the District of Nevada in 2013, which doesn't make it

18   binding on me.  So why don't we get someone to furnish the

19   parties with the private agreements.

20        MR. ADAMS:  Your Honor, if I could add just one more

21   piece of information for context?  That is, from Mr. Darden,

22   Sr.'s perspective -- and I have spoken with his counsel -- in

23   the event that there were some offset for, for example, Open

24   Gate in this case, Mr. Darden, Sr. has, through his counsel,

25   expressed to me that he would want to step into their shoes.

J3iddarc

1    So, certainly from his perspective, this was not a payment of

2    Mr. Darden, Jr.'s restitution obligation, it was a --

3            THE COURT:  Well, you know, I have a recollection that

4    there were family tensions that undoubtedly have escalated

5    perhaps even further, but I guess my question is this.  It is

6    really a question for defense counsel.  Would you like to see

7    the private agreements so that you can determine whether or not

8    you may have a claim for reducing Mr. Darden's restitution, or

9    do you think that is improvident or tactically unwise on your

10   part?

11           MS. BROWN:  May I have a minute?

12           THE COURT:  Yes.

13           (Pause)

14           MS. BROWN:  Your Honor, I'm not making that request

15   right now.

16           THE COURT:  I'm sorry.

17           MS. BROWN:  I am not making that request right now,

18   your Honor.

19           THE COURT:  OK.  Well, then there is nothing for me to

20   do, so, other than make sure that Mr. Darden then remains

21   liable for the full and total restitution ordered by the Court.

22           But right now $200 a month will remain in place until

23   and unless I hear from the government as to any proposal about

24   that.

25           Well, I'm delighted Mr. Darden has obtained

J3iddarc

1    employment.  That was the most important thing, so.  And I will

2    ask the probation officers to keep me fully informed of any

3    material developments.

4                P.O. LEHR:  Yes, your Honor.

5                THE COURT:  All right.  Very good.  Thanks a lot.

6                MR. ADAMS:  Thank you, your Honor.

7                THE CLERK:  All rise.

8                (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25